69 So.2d 502

## BERTUCCI v. BERTUCCI.

### No. 41079.

Dec. 14, 1953.

Bossetta, Bossetta & Gipson, by Gaspar R. Bossetta, New Orleans, for plaintiff-appellant.

Arthur Landry, New Orleans, for defendant-appellee.

LE BLANC, Justice.

This is a suit brought by a daughter against her father in which she seeks to have the sale of her undivided one-half interest, which she acquired by inheritance from her mother, in two pieces of real estate in the City of New Orleans set aside and/or to be declared to be a donation in disguise which should be revoked.

The ground on which she would have the Court set the sale aside is that there was no consideration whatsoever that passed and that she signed the act solely for the convenience of her father who promised her that if she would do so he would permit her to live in the house on one of the properties as long as he lived and that at his death she would inherit the same. The basis on which she seeks to have the sale declared to be a donation in disguise and as such, a nullity, arises out of her allegation that at the time the transfer was made by her to her father, she did not have any source of income, nor did she have or own

any other property and that in signing the said sale she transmitted all the property she owned and reserved nothing for her sustenance.

In her petition plaintiff further alleges that her father, contrary to his agreement, has placed the property on the market for sale and has informed her that he would give her absolutely none of the proceeds from the sale and that he is trying to evict her. She also alleges that she never gave her father any cause or provocation for his action; that the sale made to him by her was really a donation in disguise for his convenience and since he has violated his agreement, she desires to revoke the donation.

Defendant filed an exception of no cause or right of action to the suit and upon it being overruled he filed an answer, under reservation of his exception. In his answer he sets out that after his wife died, he had her succession opened on July 12, 1934. That at her death he paid bills that were chargeable to the community, aggregating $1,013 and he also paid the expenses of the succession amounting to $300. That in the succession proceedings he and the plaintiff were placed in possession of the property, each in the proportion of the undivided one-half, her half being subject to the usufruct in his favor as widower in community. That the properties were then valued at $9,000, subject to an outstanding

mortgage of $4,844.86 which, with the debts and expenses of $1,313 he had paid, reduced the net value to $2,848.14, leaving the value of plaintiff's half interest at $1,421.07, subject to his usufruct.[1]

Defendant further avers that foreclosure was threatened on the mortgage bearing on the properties and that only a loan which had been arranged with the Home Owners' Loan Corporation could save them and that he had to pay all costs involved in obtaining said loan, these including the succession costs, the cost of having plaintiff's interest transferred in order to grant a new mortgage and the cost of the mortgage itself.

He further alleges that he offered to continue to support plaintiff in consideration of the settlement of her rights in the property and that she was entirely satisfied at the time.

He next alleges that in accordance with his agreement he supported plaintiff who lived in his home until the year 1939 or 1940 when she left voluntarily and that about the month of August, 1949, out of his love and affection for her he agreed to allow her and her husband and their three children to live in his home with the use of all the household appliances.

He sets out also that on November 24, 1944 he sold one of the properties in which plaintiff had transferred her interest to him

---

1. There are some slight errors of calculation in defendant's answer but these are not material and do not affect the result reached in the decision of the case.

and it was only when he decided to sell the other that she filed this suit.

He contends in his answer that the transfer of plaintiff's interest to him on July 12, 1934 was in reality an act of partition and that any action for its rescission is prescribed by five years under the provisions of Art. 3542, LSA–C.C.

After trial in the Court below there was judgment in favor of the defendant dismissing plaintiff's demands as of nonsuit. The trial judge expressed his opinion in writing, that the act of sale of July 12, 1934 was in reality a donation but as plaintiff had not sustained the burden of proving that it was a donation ominum bonorum, although she very likely may be able to establish its character as such, he only nonsuited her. From the judgment as rendered and signed, plaintiff is prosecuting this appeal.

The exception of no cause of action and the plea of five years prescription and also other prescriptions under the Civil Code which are referred to in defendant's brief on appeal, are all re-urged, but in view of the conclusions we have reached on the merits of the case these will not be discussed nor passed on.

Plaintiff's main contentions are as follows: (1) That as there was no price or consideration given in the sale from her to her father, a simulated sale resulted and the transaction between them was nothing more than a donation in disguise; (2) as a donation it is null because in making it she divested herself of all of her property and did not reserve to herself enough for her subsistence. The law on these two propositions cannot be disputed. Article 2464, LSA–C.C., governs the first and Art. 1497, LSA–C.C., governs the second. Therefore the case revolves itself almost entirely into a question of fact.

The only witness who testified besides the two parties litigant was the man who was under agreement with defendant to purchase the property and all he was called on to state was whether or not it was worth the amount he had offered to pay for it.

Plaintiff, testifying in her own behalf, states, as she alleged in her petition, that she signed the act of sale at her father's request to help him in obtaining a loan on the property and that she received no consideration, even though the sum of $500 cash is mentioned in the deed. When she is asked about any agreement her father made with her, she at first is a bit evasive but on cross-examination admits that she kept on living with him after the sale was passed in 1934 for some seven or eight years during which time she worked at Woolworth's on Dryades Street. After she married she lived in an apartment but subsequently her father offered her to live with him and although it was under a different agreement, she went and was still living with him. She insists however that she signed the act of sale so that her father could "fix the properties" and that she

never intended to deed any of her rights therein.

We think that it is fairly well established by defendant's testimony that at the time of his wife's death in 1934, the Interstate Trust and Banking Company held a mortgage bearing on the properties and was threatening foreclosure. That the only way the properties could be saved was by obtaining a loan through a Federal lending agency known as the Home Owners' Corporation. This agency required that title to the property be placed in his name and that, of course, necessitated opening his wife's succession and having himself and his daughter recognized and placed in possession as owners. This was done and was followed by the act of sale from his daughter to him which is under attack in this proceeding.

■ Defendant admits that the stated consideration of $500 in the act of sale was not paid but he did assume the payment, as is recited in the act, of the balance of $4,844.86 due on the Interstate Trust and Banking Company Mortgage, and verbally agreed to support plaintiff until the time of her marriage, which he did. The assumption of the mortgage was a valid consideration. It was the real consideration and substantial enough to support the sale in view of the estimated value of the property in the succession proceedings of the defendant's deceased wife. The mortgage indebtedness at the time exceeded one half of that estimated value and therefore the

consideration for the sale cannot be considered as vile or insignificant. See Brooks v. Broussard, 136 La. 380, 67 So. 65.

. Plaintiff produced and introduced in evidence a certificate of mortgage indicating that as of July 12, 1934, there were no uncancelled mortgages inscribed against the property which, if so, would have the effect of rendering void the stated consideration arising out of the assumption of the Interstate Bank Mortgage. Off-setting the failure of this certificate to show the mortgage however, the record contains a copy of the act of sale from the plaintiff to the defendant of July 12, 1934 in which is found the specific recital of the existence of the Interstate Bank Mortgage with the record of its registration in the Mortgage Office, and also its assumption by the vendee as an additional consideration for the sale. Besides, in the act of mortgage in favor of Home Owners' Loan Corporation, executed on July 20, 1934, there is contained the recital to the effect that reference to the Certificate of Mortgages reveals that the property is not subject to any mortgage: "Except: The one granted in favor of the Interstate Trust & Banking Co. to secure the sum of $6000.00 int. etc., as per act before D. C. Cokern, N.P. 12/12/29, recorded M.O.B. 1414, folio 464, 12/14/29, which will be duly paid out of the proceeds hereof and the mortgagors bind and obligate themselves to cancel said inscriptions of record." Counsel for defendant offered in evidence the certificate from

the mortgage office showing the cancellation of the mortgage and whilst the offer is not found in the record there is no doubt that it was taken care of under the obligation assumed in the mortgage act to the Home Owners' Loan Corporation because it is shown by other testimony that the property has been free of any mortgage since 1944. The omission to list the mortgage in the certificate as of July 12, 1934, prepared in the Mortgage Office was evidently a mistake.

Plaintiff's assertion that she signed the act of sale merely to allow her father to "fix the properties" and that she didn't think that she was "signing away" any of her rights, cannot be reconciled with the allegation found in her petition that "she signed said act of sale because the defendant had promised that if she would do so, he would permit her to live in said house as long as he lived, and that at his death, she would inherit same." Plaintiff was twenty-two years old at the time and she surely must have realized that what she was signing was an act of sale. Very significant also is the fact that in 1944, when her father sold one of the properties, her interest in which had also been transferred, she made no protest. Her explanation concerning that sale is that she "just let it go."

■ We conclude, from all the evidence and testimony in the case, that the consideration given in the sale of July 12, 1934, was certain and sufficient, that plaintiff fully consented to the transfer of her interest

in the property. There was a thing sold, a price agreed on and consent. All three circumstances mentioned in Art. 2439 of the LSA–Civil Code were present and as between the parties, there resulted a good and valid sale.

■ The reasons we have advanced and the conclusion we have reached are different entirely from those given and that reached by the trial judge in rejecting plaintiff's demands and dismissing her suit as the case of nonsuit. However, in view of the fact that the defendant did not appeal, nor did he answer the appeal, the decree will have to stand as rendered in the judgment appealed from.

Decree affirmed at the costs of the plaintiff, appellant.

HAWTHORNE, J., absent.