188 So.2d 633 (1966)
Andrew E. AREAUX
v.
Dominick MAENZA and Maryland Casualty Company.
No. 2264.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1966.
Frank J. D'Amico and Anthony J. Vesich, Jr., New Orleans, for plaintiff-appellant.
Porteous & Johnson, Perrin C. Butler, New Orleans, for plaintiff-intervenor.
Walter E. Doane and Francis G. Weller, New Orleans, for defendants-appellees.
Before McBRIDE, CHASEZ and HALL, JJ.
HALL, Judge.
Andrew E. Areaux ("Plaintiff") sued Dominick Maenza ("Defendant") and Maryland Casualty Company ("Maryland"), defendant's liability insurer, in solido, for personal injuries and property damage allegedly sustained by him as the result of a collision between a Chevrolet automobile owned and operated by him and a Pontiac automobile owned and operated by defendant.
Defendant and Maryland filed separate pleadings in answer to plaintiff's suit. Defendant's *634 pleading was a general denial. Maryland filed a general denial and coupled with it a reconventional demand against both plaintiff and defendant in which it alleged that the liability policy it had issued to defendant excluded coverage for damage intentionally caused by the insured, and therefore did not cover the collision in question since defendant deliberately and intentionally ran his car into plaintiff's. Maryland prayed for dismissal of plaintiff's petition and alternatively for a judgment declaring that its policy afforded no coverage for the damages alleged by plaintiff and that it owed no defense to defendant.
Federal Insurance Company ("Federal"), plaintiff's collision insurer, intervened in the suit to recover $179.33 which it had paid to repair plaintiff's automobile.
Following trial on the merits judgment was rendered:
1. In favor of plaintiff and against defendant in the sum of $100.00 plus interest and costs.
2. In favor of Maryland and against plaintiff dismissing plaintiff's suit as to Maryland at his cost.
3. In favor of Federal and against defendant in the sum of $179.33 plus interest and costs.
4. In favor of Maryland and against Federal dismissing Federal's intervention as to Maryland at intervenor's cost.
Plaintiff appealed devolutively from this judgment praying that the amount awarded him be increased from $100.00 to $1,500.00 and that he have judgment for the latter amount against both defendant and Maryland in solido.
The collision which gave rise to this litigation occurred on the Airline Highway in Jefferson Parish at approximately 1 o'clock in the morning of March 25, 1964. It is necessary however to briefly review the events which took place in the hours just preceding the accident.
On the night of March 24th plaintiff met defendant, an acquaintance of some years standing, at the Jefferson Downs Racetrack. Defendant was accompanied by a friend, Glen Calvert, and a young woman companion. During the course of the evening defendant and plaintiff entered into a wager relative to defendant's woman companion. Each of them put up $150.00 which was turned over to Calvert as stakeholder. When the races were over defendant drove Calvert to Calvert's home in New Orleans and plaintiff followed in his own car. At some time, either before they left the racetrack or during the drive to Calvert's home, Calvert turned over all of the stake money to defendant.
From Calvert's home defendant proceeded alone in his automobile to a barroom on the Airline Highway in Jefferson Parish followed by plaintiff in his own car. They arrived at the barroom almost simultaneously and went inside. Plaintiff demanded "his" money from defendant but defendant wanted to call the bet a draw and returned $145.00 to plaintiff, which was $5.00 less than the amount plaintiff had put up. An argument developed over the $5.00 and the parties went outside in the parking lot where they engaged in a fist fight which lasted five or ten minutes. Finally defendant either knocked or wrestled plaintiff to the ground and jumped on top of him, but finally let him up and plaintiff got in his car, drove off, and headed toward New Orleans on the Airline Highway. Defendant followed in his own car.
In this vicinity the New Orleans bound roadway of the Airline Highway consists of two lanes. Plaintiff was proceeding toward New Orleans in the outside lane at about 35 miles per hour when defendant, who was then proceeding in the same direction in the neutral ground lane, overtook plaintiff and drove his car into the left side of plaintiff's car, knocking it off the highway and partially into a ditch. Defendant's car came to rest also off the highway and a few feet behind plaintiff's.
*635 The material issues are:
(a) Whether defendant's acts constituted an intentional tort on his part, and
(b) Quantum.
If defendant's actions in running into plaintiff's car and forcing him off the highway were intentional, the policy issued to him by Maryland affords no coverage to defendant, and Maryland is relieved of any liability to plaintiff for such actions. (See Wigginton v. Lumbermens Mutual Casualty Company, 169 So.2d 170). This results from an exclusion in the policy which reads:
"This policy does not apply * * *:
"(b) to bodily injury or property damage caused intentionally by or at the direction of the insured."
Although the Trial Judge gave no written reasons for judgment he was evidently of the opinion that defendant deliberately and intentionally ran into plaintiff's car. Our study of the record has led us to the same conclusion.
Defendant gave a signed statement to Maryland's adjuster which, after referring to the fight in the parking lot, reads in part as follows:
"* * * When I let him up he [plaintiff] cursed me again and threatened to kill me. Then he got in his car and took off south down the Airline Highway, and I chased him in my car, and I had a tire wrench on my front seat. I chased him for about 2-3 blocks, as I was mad and wanted to catch him. I came up alongside his car and tried to make him pull over by swerving my car towards his, and our cars bumped and he pulled over to the shoulder. I pulled over and got out with the wrench in my hand, and he got out and ran away from me. I caught him but threw the wrench aside. * * *"
Defendant upon being questioned by the two State Police Troopers who investigated the accident, told Trooper Brisolara:
"He told me that he and Areaux had had a fight and that he chased Areaux and in an attempt to stop him had run his car off the road."
This is what defendant told Trooper Buccola:
"Maenza stated that he deliberately wrecked the vehicle to his right and forced him off the road."
Plaintiff told Trooper Buccola the same thing:
"He collaborated (sic) what Maenza said, that they had just had a fight at the barroom, that he left first and was travelling on the Airline Highway when he was forced off the road."
When plaintiff consulted his doctor (Dr. Frank R. Gomila, Jr.) he told the doctor that defendant had "deliberately" run him off the road.
In testifying at the trial both plaintiff and defendant sought to change their stories, since both of them by that time had become apprised of the fact that Maryland's policy would not cover an intentional tort.
Our review of the record convinces us that defendant deliberately and intentionally ran plaintiff off the highway.
In spite of the fact that plaintiff alleged in paragraph 5 of his petition that defendant "* * * drove his motor vehicle into the left side of plaintiff's * * * thereby intentionally forcing petitioner's vehicle off the roadway * * *" (emphasis supplied), plaintiff now takes the inconsistent position that defendant's actions were not intentional because defendant was too drunk at the time to be capable of forming an intent.
While it is true that defendant had been drinking, and that the State Troopers charged him with driving under the influence of liquor, our review of the record convinces us that defendant was not too intoxicated not to know what he was doing.
The question of quantum depends upon whether plaintiff's injuries were caused by *636 the collision or whether they were caused by the fight in the parking lot.
When plaintiff was questioned by the State Troopers at the scene of the collision, he complained of no injuries, and they observed none. Plaintiff did not consult a physician until a week later (April 2, 1964), when his attorney sent him to Dr. Frank R. Gomila, Jr. He was then complaining of a pain in the neck, dizziness, headache, and a pain in the hip, and said that he had vomited several days after the accident. Dr. Gomila found some evidence of muscle spasm in the neck on the right side, contusions on the right hip and both shoulders, and a large bruise on the left side of the head. Dr. Gomila prescribed a muscle relaxant and short wave diathermy and gave him a prescription to relieve pain. He advised plaintiff to stay in bed for a few days. Dr. Gomila saw plaintiff eleven times and discharged him as completely cured, without any residuals, on June 30, 1964.
In describing the fight in the parking lot defendant had testified that several blows were exchanged, and that he hit plaintiff in the stomach and jaw; that they wrestled in the shells of the parking lot for five or ten minutes; and that he got plaintiff down on the ground and jumped on top of him. Dr. Gomila testified that all of plaintiff's injuries and complaints could have been the result of the fight in the shell parking lot of the bar.
The Trial Judge was evidently of the opinion that plaintiff's injuries resulted from the fight and not from the collision because he gave plaintiff judgment against defendant for only $100.00. We find no error in the Trial Judge's conclusion.
It is evident that the $100.00 judgment awarded plaintiff was for the deductible portion of the damage done to his car. The total damage amounted to $279.33, and Federal, his collision insurer, was given judgment against defendant for the remainder amounting to $179.33.
Defendant neither appealed from the judgment rendered against him, nor answered plaintiff's appeal. Defendant cannot have the judgments corrected in his favor even though suggested in his brief. See Parker v. Interstate Life & Accident Insurance Company, La.App., 172 So.2d 367.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.