209 So.2d 18

**DEPARTMENT OF HIGHWAYS,**
State of Louisiana,

v.

**Bryan CLEMMONS, Sheriff of East
Baton Rouge Parish et al.**

No. 49010.

March 25, 1968.

Dissenting Opinion April 8, 1968.

Dissenting Opinion April 16, 1968.

Rehearing Denied April 29, 1968.

Philip K. Jones, Norman L. Sisson, Robert J. Jones, Baton Rouge, for relator.

Victor A. Sachse, Maurice J. Wilson, Hopkins P. Breazeale, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for intervenors.

C. A. Miller, Jr., Frederick W. Ellis, Hall, Raggio & Farrar, John B. Scofield, Lake Charles, for intervenors-respondents.

HAMITER, Justice.

The Department of Highways of the State of Louisiana (referred to hereinafter as Department) seeks in this cause to enjoin the enforcement of a money judgment rendered by the Court of Appeal Third Circuit, in a previous suit styled Gray et al. v. State of Louisiana, through the Department of Highways et al., 191 So.2d 802, in favor of Reuben F. Gray and others against W. R. Aldrich & Company (hereafter referred to as Aldrich) and its surety (the National Surety Corporation).

The Nineteenth Judicial District Court in East Baton Parish, in which this action was filed, refused to enjoin the judgment's enforcement. Whereupon, the Court of Appeal, First Circuit, granted writs of certiorari, mandamus and review, following which it certified certain questions to this court.

The factual and procedural background leading up to the judgment sought to be enforced is fully detailed in our decision in Gray et al. v. State of Louisiana, through the Department of Highways et al., 250 La. 1045, 202 So.2d 24. However, in order to understand the issues presented herein it is necessary to restate certain portions of that background.

In the previous suit numerous property owners sought to recover tort damages in the amount of $740,000 for the allegedly wrongful trespass on, and the taking of dirt from, their land in connection with the construction of a highway through Calcasieu Parish. That action was brought in the Fourteenth Judicial District Court, Parish of Calcasieu. Named defendants were the Department, Aldrich (which had contracted with the Department for the construction of the highway), and Aldrich's surety. In the district court, judgment was rendered in favor of the property owners and against the Department and Aldrich, in solido, but only for $33,625 as in expropriation proceedings.

On an appeal the Court of Appeal, Third Circuit, held that the entry onto, and the removal of dirt from, the plaintiffs' property constituted a trespass for which the Department, Aldrich, and the latter's surety must respond solidarily in tort in the sum of $119,682.84, less a credit of $8,360. It also

recognized the right of Aldrich and its surety to recover from the Department all amounts which they might have to pay by reason of the judgment. 191 So.2d 802.

At the instance of the Department (in the previous case) we granted certiorari. 250 La. 27, 193 So. 531. And, following a hearing, we amended the Court of Appeal judgment by reducing the amount due by the Department to the property owners to $25,265. 250 La. 1045, 202 So.2d 24. But neither Aldrich nor its surety had sought a rehearing in the Court of Appeal or applied to this court for certiorari. Consequently, as we observed in our decision, they were not parties to the proceedings here.

Meanwhile, following rendition of the judgment in the previous cause by the Court of Appeal, and while that case was pending here on certiorari granted to the Department, the property owners sought to make executory and to enforce their judgment against Aldrich and its surety through proceedings in the Nineteenth Judicial District Court in and for the Parish of East Baton Rouge (the surety's bonds in the hands of the State Treasurer were affected), they showing that the Court of Appeal judgment was final as to those defendants by reason of their failure to apply for a rehearing in the Court of Appeal. Whereupon, the Department sought and obtained in the East Baton Rouge Parish court an injunction which prevented execution of the judgment until this court rendered a final decree in the previous matter, at which time the injunction would expire by its own terms.

Thereafter, again in an attempt to prevent execution of the judgment against Aldrich and its surety, the Department instituted the instant proceedings, in which Aldrich and its surety intervened on behalf of the Department and prayed for preliminary and permanent injunctions. In connection therewith they obtained a temporary restraining order. But after a hearing on the rule for the preliminary injunction the trial court dissolved the temporary restraining order, and it denied the preliminary injunction.

The Department, Aldrich and the surety applied for and obtained writs of certiorari, mandamus and review from the Court of Appeal, First Circuit, seeking to compel the district court to enjoin execution of the judgment.

The Court of Appeal then certified to us the following four questions:

"1. Should the judgment of the Supreme Court rendered in this case (250 La. 1045, 202 So.2d 24) be interpreted by this Court as fixing the total and ultimate liability of the State of Louisiana, through the Department of Highways, at $33,625.00, subject to a credit of $8,360.00?

2. Should the judgment of the Supreme Court be interpreted to mean that insofar as W. R. Aldrich & Company

and National Surety Corporation are concerned, the judgment of the Third Circuit Court of Appeal fixes the liability of W. R. Aldrich & Company and National Surety Corporation at $111,322.84 with a limitation as to National Surety Corporation of its policy limits of $100,000.00?

3. If the latter is the case, then under the judgment of the Supreme Court is the Department of Highways liable to W. R. Aldrich and National Surety for any sum over and above the sum fixed by the Supreme Court, that is, $33,625.00, subject to a credit of $8,360.00?

4. Should the judgment of the Supreme Court be interpreted to mean that the liability of all parties concerned is fixed at $33,625.00, subject to a credit of $8,360.00?"

█ Because the answers to one or two of these questions will settle the dispute, we decided to order the entire record transmitted to us and to handle the matter as though it had come here directly on appeal. This we are authorized to do under the provisions of Article VII, Section 25, of the Louisiana Constitution. See also Hall v. Rosteet, 247 La. 45, 169 So.2d 903 and Moosa v. Abdalla, 248 La. 344, 178 So.2d 273.

As is readily perceived by the foregoing recitation of the circumstances leading up to our present consideration, the basic question presented to us now is whether the landowners (plaintiffs in the previous suit) should be permitted to enforce against Aldrich (the Department's agent) and its surety, the $111,322.84 judgment of the Court of Appeal, it having been clearly established by our later ruling on certiorari that they were entitled to no more than $25,265 from the Department which is primarily responsible for the taking (and which, concededly, has paid this amount to such landowners).

In refusing to issue the preliminary injunction herein the trial judge observed: "Counsel for plaintiffs seeking execution on the judgment contends, however, that the failure of Aldrich and National Surety Corporation to apply for rehearing to the ruling of the Court of Appeal and application for writs meant that the Court of Appeal judgment as to them became executory and subject to enforcement after the normal delays. * * * Numerous cases are cited wherein it is evident that the Supreme Court has been faithful to the proposition that no relief can be granted to the party that fails to perfect an appeal, and as to him the judgment of the lower court cannot be amended to his advantage. * * * the wealth of jurisprudence on analogous situations presented sustains the finality of the judgment against Aldrich and National Surety Corporation.

"This court agrees with counsel for applicants that it is manifest from the Supreme Court decision that the high court was of

the opinion that plaintiffs' claims were not worth in excess of $25,265.00. But as stated in that opinion not once, but twice, * * * they (Aldrich and its surety) were no longer parties to the proceeding. While this court may be in sympathy with the position of applicants, a decision in their favor would not only be repugnant to the clear language of a number of articles of the Code of Civil Procedure, but be against the stated policy of a long line of decisions of the Supreme Court dealing with the finality of judgments. * * *" And such trial judge further asserted that if that long standing line of jurisprudence were to be departed from in the instant case (for policy consideration) such action would have to be taken by this court itself.

There is no doubt but that the district judge has correctly stated the general rule relative to the finality of a judgment of the Court of Appeal when no rehearing has been applied for in that tribunal. However, we have concluded that there do exist circumstances which warrant our recognizing an exception to that rule in the instant matter. From the record it appears that, in the contract between the Department and Aldrich, the former agreed to defend the latter in any litigation arising out of the use of the land taken and to hold it harmless for any damages it might suffer and from any judgment which might be rendered against it.

In other words the agreement, we think, renders the Department liable to the contractor (and/or its surety) for any judgment executed against it based on the use of the land taken, including the judgment which is presently sought to be enforced. Indeed, the Department recognizes such liability in its application for writs to the Court of Appeal, and such ultimate responsibility forms the basis for the Department's right to enjoin enforcement of the judgment. Moreover, the very Court of Appeal judgment which the property owners seek to enforce authorizes Aldrich and its surety to recover from the Department any amounts which they might have to pay.

We have viewed these circumstances in connection with the sizable amount involved (approximately $86,000). In our opinion it would be unconscionable to permit such a "raid" on the public fisc—the taxpayers' money—to benefit the landowners who have been judicially declared not to be entitled to such amount. Of course, we recognize that in the past, because of procedural inattention in some law suits, parties have become the beneficiaries of windfalls to which they may not have been legally entitled. But we can find no case where the windfall was so large, involved public funds, and to which the proposed recipients had been judicially declared to be not entitled.

We view this matter much as the court viewed the problem presented in Koerber v. City of New Orleans, 228 La. 903, 84 So.2d 454, which involved an oversight by an expropriating authority. In that case the City

of New Orleans had expropriated a large area of land in Jefferson Parish for the construction of an airport. Through an error in the title examination it failed to expropriate four acres within the airport limits which belonged to the plaintiff. Following construction of the airport, plaintiff sought in a petitory action to have her right to the property recognized and to recover the land. Although declaring that plaintiff's title had never been divested we stated: "Accordingly, considerations of public policy, not less than the suggestions of natural justice, and under the circumstances presented in the case at bar, *plaintiff cannot be permitted to reclaim the property in question, require the demolition of the public works, or prevent its use by the defendant City*, being restricted only to her right to compensation for the market value of the land taken. * * *" (Italics ours)

■ No less compelling public policy demands in this case that we exercise our equity jurisdiction to prevent such an excessive and inequitable loss to the public fisc. This is not to say that we condone carelessness or inattention on the part of counsel in the representation of their clients—either public or private. We merely hold that in the present situation we cannot sit by and permit so large an amount of tax money to be dissipated to persons clearly not entitled thereto (they have already received the full sum found by this court to be due them) because of such oversight. Rather, we think,

as we have said, that public policy demands that we resort to our equity powers to prevent such a result.

For the reasons assigned the judgment of the district court herein is reversed and set aside, and the case is remanded to that court with instructions to issue the preliminary injunction as prayed for and to conduct further proceedings on the prayer for a permanent injunction. All costs of the instant proceedings shall be paid equally by the intervenors W. R. Aldrich & Company and the National Surety Corporation.

SUMMERS and SANDERS, JJ., dissented with written reasons.

SUMMERS, Justice (dissenting).

The constitution is clear and free from ambiguity. It provides:

"It shall be competent for the Supreme Court to require by writ of certiorari, or otherwise, any case to be certified from the Courts of Appeal to it for review, with the same power and authority in the case as if it had been carried directly by appeal to the said court; * * * provided, however, that the Supreme Court shall in no case exercise the power conferred by this article unless the application shall have been made to the court or to one of the justices thereof within thirty days after a rehearing shall have been refused by the Court of Appeal * * *"

La.Const. art. 7 § 11. See also La.Civil Code arts. 13 & 14.

Article 2167 of the Louisiana Code of Civil Procedure again sets forth when a judgment of an appellate court becomes final and executory in these words: "A judgment of an appellate court becomes final and executory when the delay for applying for a rehearing has expired and no application therefor has been made."

These provisions are the paramount and positive law of this state recognized and applied in numerous decisions by this court. Munson v. Martin, 249 La. 925, 192 So.2d 126 (1966); Reiley v. Atlas Construction Company, 245 La. 595, 159 So.2d 688, 690 (1964); Polizzi v. Lotz, 240 La. 734, 125 So.2d 146, 150 (1960); Blasingame v. Anderson, 236 La. 505, 108 So.2d 105, 110 (1959); Corkern v. Travelers, 229 La. 592, 86 So.2d 205, 207 (1956); Bertucci v. Bertucci, 224 La. 364, 69 So.2d 502, 505 (1953); Savage v. Packard, 218 La. 637, 50 So.2d 298 (1950); Succession of Babin, 213 La. 950, 35 So.2d 864 (1948); Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947); State v. Moore, 175 La. 607, 143 So. 707 (1932). See also Court of Appeals decisions to the same effect. Harrell v. Employers' Liability Assurance Corporation, 197 So.2d 167, 168 (La.App.1967); Williams v. City of Baton Rouge, 200 So.2d 420, 426 (La.App. 1967); Gernon v. Buchanan, 201 So.2d 208, 209 (La.App.1967); Hartzog v. Eubanks, 200 So.2d 303, 308 (La.App.1967); Herman v. Jambois, 205 So.2d 63, 67 (La.App.1967); Areaux v. Maenza, 188 So.2d 633, 636 (La. App.1966); Kinchen v. Taulli, 171 So.2d 277, 279 (La.App.1965); Ballanga v. Hymel, 167 So.2d 469, 471–472 (La.App.1964); Bradford v. Patterson, 159 So.2d 342, 344 (La.App.1963).

No application was made for review of the judgment of the Court of Appeal and the judgment is final. We recognized this fact, and the parties concede the issue. The majority has simply assumed the power and authority to disregard the constitution and statute law and substitute, in its stead, their individual concept of "public policy" and "equity". This conclusion is sought to be justified because the prior judgment of this court which adjudicated the rights of these plaintiffs against the Department of Highways (250 La. 1045, 202 So.2d 24) found they were entitled to $25,265 and, therefore, they are "clearly" not entitled to the larger amount awarded by the Court of Appeal judgment against Aldrich and its surety.

The conclusion reached by the majority fails to take cognizance of the fact that Aldrich and its surety were not parties to the proceedings in which we held plaintiff was only entitled to a judgment of $25,265 against the Department; and, consequently Aldrich and its surety are not bound by that judgment. The opinion also fails to recognize that plaintiffs may be entitled to recover more against Aldrich and its surety than they recovered from the Department. This

issue is presented by the record for Aldrich dug dirt outside the areas which the Department delineated for the digging. By doing so, Aldrich committed a trespass of its own, incurred separate liability and inflicted additional damage. In the posture in which this case has been adjudged, however, plaintiffs have had no opportunity to present this issue° to this court, because Aldrich and its surety did not apply to this court for writs to review the judgment against them and the judgment became final.

My views on constitutional interpretation are in stark contrast to the view of the majority in the instant case. I believe the constitution means what it says and this court cannot substitute its concept of "public policy" or "equity powers" for the true meaning of the constitution as actually written. La. Civil Code art. 13.

Those who framed Article 7, Section 11 of the Constitution recognized that, in some instances, due to inadvertence or neglect, hardship might result from failure to apply to this court for writs of certiorari within thirty days after a rehearing had been refused by the Court of Appeal. But the drafters were aware, also, of the need for finality in litigation and this latter consideration prevailed in the final draft, and a definite time was fixed for applying for certiorari. The drafters of the constitution made no exceptions to the rule. La. Civil Code art. 13.

Our function as a court is to interpret and apply the constitution and legislative enactments, that is, we must explain and expound, not alter, amend, remake or disregard. It is inconsistent with the obligation of judges to uphold and defend the constitution, to arrogate to themselves the power to disregard clear constitutional provisions because of personally conceived notions of "public policy" or "equity". La.Civil Code arts. 20, 21.

It is my opinion that far greater harm is done by disregarding the constitution, than will result from the so-called "raid" upon the public fisc which would result if the constitution were upheld. For the judgment of the Court of Appeal in favor of plaintiffs and against Aldrich is not a "raid" on the public fisc. To the contrary, the judgment is supported by a well-reasoned opinion based upon overwhelming authority arrived at after pursuing the orderly processes of law. The opinion is, moreover, properly influenced by an abiding sense of the compelling force of constitutional, statutory and judicial authority.

If the constitution is to be changed, let it be changed by the amendatory process.

I respectfully dissent.

SANDERS, Justice (dissenting).

The decision in the present case enjoins the execution of a Court of Appeal judgment for $86,000 in favor of private land-

owners against a road-building contractor and its surety. Although conceding finality of the judgment, the majority justifies the result on the ground that the landowners were entitled to no more than $25,000 and the equity powers of the court should be exercised to prevent the execution of the judgment. I disagree with the decision.

By both constitutional and statutory provisions, a judgment of the Court of Appeal becomes final and executory when the delay for applying for a rehearing has expired and no application has been filed. La. Const. Art. 7, Sect. 11; LSA-C.C.P. Art. 2167. See Bertucci v. Bertucci, 224 La. 364, 69 So.2d 502 and State v. Moore, 175 La. 607, 143 So. 707.

After a judgment containing no vice of form becomes executory, the Louisiana Code of Civil Procedure provides only one method for modification of the substance of the judgment, that is, an action of nullity. LSA-C.C.P. Arts. 1951–2006. Such an action can be based only on fraud or ill practices. LSA-C.C.P. 2004.

The Department of Highways suggests no fraud or ill practices in the present case. Concededly, the Court of Appeal fully considered the questions relating to the amount of the award in arriving at its judgment. When the quantum has been fully considered by the appellate court, an excessive award affords no ground for enjoining the execution of the final judgment. LSA-C.C.P. Arts. 2004, 2005; Reiley v. Atlas Construction Company, 245 La. 595, 159 So.2d 688; McMicken v. Millaudon, 2 La. 180. Compare 49 C.J.S., Judgments § 359, pp. 715–716.

LSA-C.C.P. Art. 2005 explicitly provides:

"A judgment affirmed, reversed, amended, or otherwise rendered by an appellate court may be annulled only when the ground for nullity did not appear in the record of appeal or was not considered by the appellate court."

The reason underlying the above Article is that a litigant should have no second day in court after the point at issue has been fairly litigated to conclusion in an appellate judgment. See State ex rel. Pelletier v. Sommerville, 112 La. 1091, 36 So. 864. The Article speaks quite clearly and leaves no room for the exercise of equity powers to bar enforcement of such a judgment.

The majority, in my opinion, has weakened the security of final judgments by establishing a basis for reopening them under an allegation of inequity. Since I am convinced the court erred in so doing, I respectfully dissent.

Sanders and Summers, JJ., are of the opinion a rehearing should be granted.