337 So.2d 226 (1976)
Laura Claudette Culpepper RUSSELL and Armstrong R. Conley, Plaintiffs-Appellants,
v.
Louis L. CULPEPPER, Defendant-Appellee.
No. 5486.
Court of Appeal of Louisiana, Third Circuit.
August 12, 1976.
Rehearing Denied September 28, 1976.
Writ Granted December 8, 1976.
*227 Larry McCollum, Shreveport, Tillman & Mitchell by F. Clay Tillman, Leesville, for plaintiffs-appellants.
Gahagan & Gahagan, by Russell E. Gahagan, Natchitoches, for defendant-appellee.
Before HOOD, WATSON and PETERS, JJ.
HOOD, Judge.
Plaintiffs, Mrs. Laura Claudette Culpepper Russell and Armstrong R. Conley, seek a judgment decreeing two acts of sale of immovable property to be simulations or donations in disguise, and ordering defendant, Louis L. Culpepper, to account for revenues and fruits received by him from the property affected by those acts. Judgment was rendered by the trial court rejecting plaintiffs' demands and dismissing the suit. Plaintiffs appealed.
The decisive issues presented are (1) whether the document purporting to be a warranty deed from Claude W. Culpepper to Mrs. Mattie R. Culpepper, dated January 9, 1941, is a simulation, and (2) whether the document purporting to be a warranty deed from Mrs. Mattie R. Culpepper to defendant, Louis L. Culpepper, dated April 9, 1948, is a simulation or a donation in disguise.
Mrs. Mattie R. Culpepper married Rufus Conley prior to 1900, and of that union Armstrong R. Conley, one of the plaintiffs in this suit, was born. Rufus Conley died in 1901, and shortly thereafter Mrs. Mattie R. Culpepper married Claude H. Culpepper. Of that marriage three children were born, one of whom was Claude W. Culpepper, and another was defendant Louis L. Culpepper. The third child of that marriage died in infancy.
On October 3, 1929, during the existence of the community which existed between Claude H. and Mattie R. Culpepper, the said Claude H. Culpepper acquired title by warranty deed to a tract of land comprising approximately 815 acres, located in Ward 9 of Natchitoches Parish, Louisiana. That tract of land is the property which is at issue in this suit.
Claude H. Culpepper died on December 25, 1940, leaving as his sole survivors his widow, Mrs. Mattie R. Culpepper, and his *228 two sons, Claude W. and Louis L. Culpepper. His succession was opened and a judgment of possession was rendered on January 2, 1941, recognizing his widow and sons as his sole survivors and heirs at law, sending Mrs. Mattie R. Culpepper in possession of an undivided one-half interest in and to the property left by him, sending his two sons in possession of the remaining one-half interest in that property, in equal proportions, and granting to Mrs. Culpepper the usufruct provided by law on the interests inherited by her sons.
On January 9, 1941, or a few days after the above judgment was rendered, Claude W. Culpepper executed a warranty deed which purports to sell and convey to his mother, Mrs. Mattie R. Culpepper, all of his undivided interest in and to the property inherited by him from his father, and particularly his interest in the above 815-acre tract of land. The deed is in the form of an authentic act and it contains the following stipulation relative to the consideration which was paid for the property:
"The consideration for which this sale and transfer is made is the price and sum of $2,500.00, no part of which is paid in cash and the entire consideration being the assumpsite by the vendee of onefourth of all indebtedness of Claude H. Culpepper, Deceased, which indebtedness is in excess of $10,000.00, but specifically of a certain mortgage held by the Federal Land Bank of New Orleans affecting the said property in the unpaid balance of $9,479.68."
The above deed, dated January 9, 1941, is one of the documents which plaintiffs attack in this suit as being a simulation.
On April 9, 1948, Mrs. Mattie R. Culpepper executed a warranty deed purporting to sell and convey to defendant, Louis L. Culpepper, all of her right, title and interest in and to the above 815-acre tract of land, but reserving to herself the usufruct of all of said property for the remainder of her life. With reference to the consideration paid for the property, the warranty deed provides:
"The consideration for which this sale and transfer is made is the price and sum of Thirty Five Hundred Dollars ($3500.00) cash in hand paid the receipt whereof is hereby acknowledged and discharge given; and other good and valuable considerations."
The last mentioned warranty deed, dated April 9, 1948, is the second act of sale which plaintiffs contend is a simulation or a donation in disguise.
Claude W. Culpepper (one of the sons of Claude H. and Mattie R. Culpepper) died on June 20, 1955, and all of the right, title or interest which he had or may have had in and to the above tract of land has now become vested in his granddaughter, Mrs. Laura Claudette Culpepper Russell, a plaintiff in this suit.
On January 5, 1972, Mrs. Mattie R. Culpepper executed a document entitled "Renunciation of Usufruct," in which she fully and finally renounced her right of usufruct on the above 815-acre tract of land in favor of defendant Louis L. Culpepper, his heirs, successors and assigns, forever.
Mrs. Mattie R. Culpepper died on November 9, 1973, leaving as her sole and only surviving heirs at law her two sons, Armstrong R. Conley and Louis L. Culpepper, and her great granddaughter, Mrs. Russell. The succession of the decedent, Mrs. Culpepper, has never been opened.
The instant suit was filed on March 21, 1975. Plaintiffs contend, first, that although the deed from Claude W. Culpepper to Mrs. Mattie R. Culpepper, dated January 9, 1941, specifies a price, the document itself shows that no consideration was paid. They argue that the sale thus was a simulation and is void.
As we have already noted, the 1941 deed recites that the sale was made for a price of $2,500.00, no part of which was paid in cash, the entire consideration being the assumption by the vendee, Mrs. Mattie R. Culpepper, of one-fourth of all indebtedness of Claude H. Culpepper, deceased, and particularly of the $9,479.68 indebtedness owed to the Federal Land Bank of New Orleans, secured by a mortgage affecting the property described in the deed.
*229 The assumption by the vendee of an existing mortgage affecting the property being sold may constitute a valid price or consideration for the sale of that property. Succession of Viola, 138 So.2d 613 (La.App. 4 Cir. 1962); Bertucci v. Bertucci, 224 La. 364, 69 So.2d 502 (1953); Quinette v. Delhommer, 146 So.2d 491 (La.App. 4 Cir. 1962).
Plaintiffs do not take issue with the above statement of law. They argue, however, that in this case the assumption by Mrs. Mattie R. Culpepper of the indebtedness owed by her husband's estate to the Federal Land Bank did not constitute a valid consideration for the sale of the property to her in 1941, because Mrs. Culpepper was "already liable in solido" with the vendor, Claude W. Culpepper, for that indebtedness. They take the position that the vendee did not assume an obligation which she did not already owe, and that no consideration thus was paid for the property.
When Claude W. Culpepper accepted the succession of his father, he became liable for the payment of his proportionate part (one-fourth) of the debts owed by the estate. LSA-C.C. arts. 1420, 1427 and 1428. The assumption of his part of that indebtedness by Mrs. Mattie R. Culpepper had the effect of relieving the vendor, Claude W. Culpepper, of his obligation to pay any of that debt. It at least bound Mrs. Culpepper to reimburse him any amount he might be compelled to pay on that indebtedness. Regardless of whether Mrs. Culpepper was personally liable to pay all or a part of the same debt, therefore, her agreement to pay the vendor's part of it, or to relieve him of his obligation to pay any of it, constituted a valid consideration.
The law is settled that if any consideration, however small, is given for the property, the sale may not be set aside as a simulation. Milano v. Milano, 243 So.2d 876 (La.App. 1 Cir. 1971); Mut v. Mut, 222 So.2d 100 (La.App. 1 Cir. 1969); Kinney v. Kinney, 150 So.2d 671 (La.App. 3 Cir. 1963); Adams v. Trichel, 304 So.2d 740 (La.App. 2 Cir. 1974).
We conclude that the act of sale from Claude W. Culpepper to Mrs. Mattie R. Culpepper, dated January 9, 1941, is a valid sale.
Plaintiffs contend also that the act of sale from Mrs. Mattie R. Culpepper to her son, Louis L. Culpepper, dated April 9, 1948, was a simulation and thus is void. To support their contention that the act was a simulation, they rely on LSA-C.C. art. 2480, which provides:
"In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
The 1948 deed shows that the seller, Mrs. Culpepper, reserved to herself the usufruct of the property which she sold. She continued to live on, and she thus remained in possession of, that property for several years after that deed was executed. Plaintiffs contend that under those circumstances, Article 2480 of the Civil Code applies, and that a presumption thus exists that the sale was simulated. They argue that the burden rests on defendant, the purchaser in that sale, to produce proof establishing the reality of the sale, and that defendant has not met that burden of proof.
The evidence shows that Mr. and Mrs. Claude H. Culpepper lived on the above 815-acre tract of land from the time they purchased it in 1929 until Mr. Culpepper died in 1940. His widow, Mrs. Culpepper, continued to live on the property until her death in 1973.
Louis L. Culpepper, the purchaser in the 1948 deed, also has lived on the same tract of land continuously since it was purchased by his father in 1929. He dropped out of medical school at about the time of that purchase to live with his parents on the newly acquired tract of land and to assist his father in farming and managing it. Louis married Lucille Roge in 1930, and he *230 and his wife immediately established their matrimonial domicile on that 815-acre tract of land. They lived in the same home with Mr. and Mrs. Claude H. Culpepper from 1930 until the elder Mr. Culpepper's death occurred in 1940. From 1940 until Mrs. Mattie R. Culpepper's death in 1973, the homeplace was occupied by Mr. and Mrs. Louis L. Culpepper and by Mrs. Mattie R. Culpepper. The seller and the purchaser thus were residing on the property before the 1948 act of sale was executed, and both of those parties remained in possession of it after that sale was completed.
Shortly after Claude H. Culpepper died, Mrs. Mattie R. Culpepper asked her daughter-in-law if she would take over the management of the homeplace. The younger Mrs. Culpepper agreed to do so, and she has managed the home continuously since that time. From 1929 until 1940 defendant, Louis L. Culpepper, conducted farming and cattle raising operations on the property with his father, and since his father's death in 1940 he has had complete control of the property. He has farmed it, constructed improvements on it, repaired the improvements, sold timber, paid taxes on the property as they became due, and otherwise has managed that property. He also has made all of the payments which became due on the mortgage indebtedness affecting that property, and eventually he paid the full amounts due on those debts.
Plaintiff Conley and Claude W. Culpepper were living in Shreveport when Claude H. Culpepper died. Conley explained that it was logical for Louis to take over the management of the property at that time. Conley's testimony, in part, is that:
". . . Louis had lived there all of his life, all of his married life, and he was there on the place and everything that he had was there. I had a job, a piece of a job and I was dabbling around in the oil business. He was the logical man to take over. I was no farmer. Claude was no farmer."
The evidence shows that Mr. and Mrs. Louis L. Culpepper cared for Mrs. Mattie R. Culpepper from 1940 until her death in 1973, or for a period of about 33 years. They provided her with food, clothing, transportation, medical treatment, hospitalization, and with all of her other needs during that time. The evidence is uncontradicted that Mrs. Louis L. Culpepper prepared meals for her mother-in-law, cleaned her room, nursed her and bathed her at times, and otherwise took care of her personal needs. Neither of the plaintiffs, Conley or Mrs. Russell, has lived on the property at any time since 1940, and neither assisted in caring for Mrs. Mattie R. Culpepper after the death of her husband. The evidence shows that Mrs. Russell's grandfather, Claude W. Culpepper, did not live on the premises at any time after his father died in 1940, and he did not assist in caring for Mrs. Mattie R. Culpepper after that date.
Although the seller in the 1948 deed, Mrs. Mattie R. Culpepper, reserved to herself the usufruct and remained in possession of the property sold, the evidence makes it clear that the purchaser, Louis L. Culpepper, also continued to live on and to possess that property after the sale was completed.
We think the purpose of LSA-C.C. art. 2480 is to create a presumption that there was no delivery of the property, and thus that there was no completed sale, in a case where the seller reserved the usufruct to himself and thereafter remained in possession of the property which purportedly was sold. We think that conclusion is compelled when Article 2480 is read in conjunction with the preceding article of the Civil Code, Article 2479, which provides that "the law considers the tradition of delivery of immovables, as always accompanying the public act, which transfers the property."
In Joiner v. Ruark, 174 La. 615, 141 So. 76 (1932), plaintiffs sued to enjoin a creditor from seizing property which she had purchased from her mother. The creditor contended that the sale was a simulation, relying in part on Article 2480 of the Civil Code. The evidence showed that plaintiff and her mother were living on the property *231 at the time of the transfer, and they continued to live on it after the sale was completed. The Supreme Court held that the evidence overcame the presumption of a simulation provided in Article 2480, and that the sale to plaintiff was valid. The court said:
"The fact that Mrs. Ruark remained on the property with her daughter after the transfer does not show that delivery was not made, and, under the circumstances, does not create a strong presumption of simulation. The deed was one by public act. Delivery is deemed to have followed it. Civ.Code, art. 2479. As Mrs. Ruark and her daughter were living together on the property at the time of the transfer, we fail to see how a more effective delivery could have been made, unless it be held, which would be unwarranted, that Mrs. Ruark should have left the place. Any presumption of simulation that might have arisen, under article 2480 of the Civil Code, from the fact that Mrs. Ruark continued to remain on the property after the transfer, is fully overcome, not only by the natural desire of the mother and daughter to continue to live together, but by the entire record. In our view, the transfer was not a simulation."
In Succession of Rolling, 127 So.2d 292 (La.App. 4 Cir. 1961), a mother sold real property to her daughter, but reserved the usufruct to herself for her lifetime, and thereafter the mother and daughter continued to live together on the property. The Fourth Circuit Court of Appeal held that the presumption created by LSA-C.C. art. 2480 had been successfully rebutted, and that the sale was not void as a simulation. The court said:
"The court feels that the . . . presumption of Article 2480 of the Revised Civil Code is rebutted by the fact that $3,500.00 was paid and also by the additional fact that Miss Bonnie W. Rolling was as much in possession as her mother by living with her mother."
A similar issue was presented in Succession of Dornier, 240 So.2d 579 (La.App. 4 Cir. 1970). The court determined there, as was held in Joiner and Rolling, that the presumption created by LSA-C.C. art. 2480 had been overcome.
In the instant suit the evidence satisfactorily explains why Mrs. Mattie R. Culpepper continued to live on the 815-acre tract of land after she sold it to her son. We do not think it was necessary for her to move off the property after it was sold in order for that sale to be valid. Our conclusion is that an effective delivery of the property to the purchaser was made by the execution of the 1948 deed, and that the evidence overcomes the presumption created by LSA-C.C. art. 2480.
Plaintiffs contend, however, that the evidence fails to show that the consideration stipulated in the 1948 deed was paid.
Louis L. Culpepper testified that he paid the recited price of $3,500.00 to his mother, in cash, at the time the deed was executed, but that the payment was made out of the presence of the notary and witnesses. He stated that his wife had inherited some money, and that he obtained most of the funds he needed for the purchase from her. Mrs. Louis L. Culpepper confirmed the fact that she had inherited some money from her parents, and that she turned all of it over to her husband. She testified that she gave him between $3,000.00 and $5,000.00 in 1930. In the deed itself, Mrs. Mattie R. Culpepper acknowledged that that amount had been paid to her, in cash, by the purchaser. And, the trial judge obviously concluded that the consideration had been paid, since he found that the 1948 deed was not a simulation or a donation in disguise.
Plaintiffs argue that it is unlikely that the recited consideration was paid, since defendant produced no receipt, no cancelled check, no bank statements and no witnesses, other than his wife, to corroborate his statements. The record also contains no evidence tending to show what Mrs. Mattie R. Culpepper did with the money after she allegedly received it.
Despite the persuasive arguments made by plaintiffs, we have concluded that there is sufficient evidence to support the *232 conclusions obviously reached by the trial judge. We have observed many times that the factual findings of the trial judge are entitled to great weight, especially when the credibility of witnesses is involved, and that his conclusions as to the facts should not be disturbed unless found to be clearly erroneous. We thus concur in the apparent finding of the trial court that the cash consideration recited in the 1948 deed was paid.
Plaintiffs contend, alternatively, that the consideration paid to the seller in the 1948 deed was less than one-fourth the value of the property at the time of the sale, and that the purported conveyance thus was a donation in disguise. They rely on Article 2444 of the Civil Code, which provides:
"The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale."
In determining whether the price paid was less than one-fourth the value of the immovable sold, both the price and the value of the property must be determined as of the time of the sale. Estate of Schwegmann, 298 So.2d 795 (La.1974).
The evidence establishes that the 815-acre tract of land involved in the instant suit had a value of $43.26 per acre, or a total value of $35,256.90, when Mrs. Mattie R. Culpepper sold the naked ownership of her three-fourths interest in that tract to Louis L. Culpepper in 1948. Mrs. Culpepper was 67 years of age at that time and she had a life expectancy of 10 years. According to plaintiffs' own computations, the total value of the property which was conveyed to defendant by the 1948 deed was $14,765.46. One-fourth of that value amounts to $3,691.36.
Plaintiffs argue that since defendant paid only $3,500.00 for the property conveyed to him, whereas one-fourth the value of that property was $3,691.36 at that time, the price paid by him was below onefourth of the real value of the immovable sold, and that the sale thus must be held to be a donation in disguise.
Plaintiffs have overlooked the fact that the consideration stipulated in the 1948 deed was not only $3,500.00, which we have found was paid in cash, but also "other good and valuable considerations."
Defendant testified that in addition to the payment of $3,500.00 in cash to his mother, he also promised as an additional consideration for the sale that he would care for her for the rest of her life. He stated that his promise, as a part of the consideration for the property, was that "I would take care of her, feed and clothe and tend to her every want for money or anything she needed until she died, which I have done diligently and with no help from anyone else."
The evidence establishes, without contradiction, that Mr. and Mrs. Louis L. Culpepper cared for defendant's mother for 33 years, from 1940 until 1973. As already noted, they provided her with food, clothing, transportation, nursing care, medical and surgical treatment, hospital care, and her other needs during that time. Defendant has attempted to place a value on the services which he and his wife rendered for Mrs. Mattie R. Culpepper. It is unnecessary for us to consider these estimates of value, however, because the evidence establishes that the care which they provided for the elder Mrs. Culpepper greatly exceeded the additional consideration which may have been required to constitute more than one-fourth the value of the property sold. We find, in fact, that the value of the services provided by defendant, and his wife substantially exceeded that of the entire tract of land at the time of the sale.
The services which were rendered by defendant and his wife in caring and providing for Mrs. Mattie R. Culpepper from 1940 until the date of her death in 1973 may properly be regarded as consideration for the sale evidenced by the 1948 deed. Kinney *233 v. Kinney, 150 So.2d 671 (La.App. 3 Cir. 1963); LaBorde v. Dauzat, 158 So.2d 637 (La.App. 3 Cir. 1963); Succession of Viola, 138 So.2d 613 (La.App. 4 Cir. 1962).
In Succession of Viola, supra, the Fourth Circuit Court of Appeal said:
"Services rendered, such as cooking meals, cleaning house, washing clothes, etc., in connection with the case of a helpless old person may constitute consideration for a transfer of property. Robinson v. Guedry, La.App., 181 So. 882."
We conclude that the consideration paid for the property which Mrs. Mattie R. Culpepper sold to defendant on April 9, 1948, was adequate, and that the act of sale executed on that date was not a donation in disguise.
Since we have found that the 1948 sale from Mrs. Mattie R. Culpepper to her son was not a donation, it necessarily follows that there is no merit to plaintiffs' argument that that transaction was prohibited by LSA-C.C. art. 1533, as that article was worded at the time of the sale.
There also is no merit to plaintiffs' argument that the 1948 sale was void under LSA-C.C. art. 1497, as being a donation omnium bonorum. We have found that the conveyance was not a donation, and the evidence does not show that the alleged donor. Mrs. Culpepper, failed to reserve to herself enough for subsistence.
Plaintiffs argue further that defendant should be made to collate under Article 1248 of the Civil Code because the above property was sold to him at "a very low price." We have already determined that the consideration paid for the property by defendant, including the services rendered for the vendor, was substantial. Regardless of the amount which was paid for the property, however, the law is settled that collation cannot be required until the succession to which it belongs is opened. Until then, the demand for collation is premature. Jackson v. Jackson, 175 So.2d 360 (La.App. 2 Cir. 1965).
Plaintiffs contend, finally, that the trial court erred in refusing to admit or to consider the testimony of plaintiff Conley that his mother told him, about four years after the 1948 sale had been completed, that she had transferred title to the property to defendant so she could get "on welfare." Although the trial judge sustained defendant's objection to that testimony, he admitted it under a proffer of proof. It is unnecessary for us to consider the correctness of the ruling of the trial court, because even if the evidence should be admitted and considered it would not affect any of the conclusions which have been reached in this case.
A review of all of the facts convinces us that there was no error in the judgment of the trial court rejecting plaintiffs' demands and dismissing the suit.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
This is a sad situation where one child has taken the responsibility of caring for a parent and the family property for many years and has come to feel (as apparently did the parent) that he is entitled to ownership of all the property after the death of the parent. In my view, it was precisely because of this problem that Civil Code article 2480 provides:
"Art. 2480. In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."
Under this article it is incumbent on Louis L. Culpepper to establish the reality of the sale. He testified that the price was paid in cash and the deed recites a payment *234 of cash, but this says nothing insofar as evidence to prove the sale. Something more is called for by the codal provision and, in reviewing the record, I find no proof as to good faith or the reality of the 1948 sale.
An argument is made that, by taking care of the property, managing it, investing his wife's funds, and, in caring for the mother, Mattie Ruffer Culpepper, Louis L. Culpepper paid for the property. This argument is not valid because Louis L. Culpepper and his wife lived on the property, and Louis has failed to establish that the value of his services is greater than the amount he derived from the property. There is an indication in the record that substantial sums were earned from timber production and it is apparent that Louis L. Culpepper and his wife made a large part of their livelihood out of the 815 acres in dispute.
As to taking care of the aging mother, it must not be forgotten that she was living on the property which belonged to her and the funds which Louis L. Culpepper and his wife used to take care of the elderly lady could very well be said also to be hers.
In Louisiana we must continue to guard the rights of forced heirs. The law does not recognize a method of acquiring title to property by taking care of family land and an aging parent. One does not thereby become vested with ownership.
If Louis L. Culpepper expended more in money or services in taking care of this property than he received in payment, then he has a claim against his fellow heirs. However, he has not proved the reality of the sale in 1948.
The trial judge was not manifestly in error in concluding that the 1941 sale from Claude W. Culpepper to Mrs. Mattie R. Culpepper is valid.
Nevertheless, the 1948 sale should be set aside and the rights of plaintiffs, Armstrong Conley and Laura Russell, should be recognized as they would flow from the inheritance situation, absent the sale of 1948. Any remaining claims of Louis L. Culpepper should be reserved to him.
For these reasons, I respectfully dissent.