SARTAIN, Judge.
This is a suit in which plaintiff seeks to recover damages for personal injuries sustained by his seventeen year old son, Charles LeBrane. Charles LeBrane received serious injuries to his left arm and hand when he was cut with a knife by James Lewis during an altercation which occurred August 7, 1969, on the premises of the Jack Tar Capitol House Hotel in Baton Rouge, Louisiana. Plaintiff brought suit in tort against James Lewis, Ronald T. Larsen, general manager of the hotel, H & K Corporation, Jack Tar Management Company and the Jack Tar Capitol House Hotel, as the employers of both LeBrane and Lewis, and Fireman’s Fund Insurance Company, the employers’ liability insurer. Plaintiff also brought suit seeking recovery of workmen’s compensation benefits against LeBrane’s employers and their compensation insurer. The two suits were consolidated and after trial on the merits plaintiff was awarded recovery only against defendant, James Lewis, on the tort claim.
The testimony in the record concerning the facts of the incident is replete with contradictions and conflicting versions of the altercation which resulted in the injuries to plaintiff’s son. Our examination of the entire record reveals that on August 7, 1969, the date of the incident, Charles LeBrane was employed as a washer in the hotel kitchen and James Lewis was the kitchen steward. As supervisor of the kitchen Lewis had the authority to hire and fire kitchen personnel and had, in fact, hired Charles LeBrane approximately one month before the incident.
On the day of the altercation LeBrane notified Lewis he would be late for work and he did not arrive at the hotel until approximately 11:00 A.M. Upon his arrival some discussion occurred between LeBrane and Lewis concerning LeBrane’s haircut and his condition for work that day which resulted in Lewis giving LeBrane the rest of the day off. LeBrane apparently refused to leave the hotel and Lew told him he was fired. The two then took the service elevator up to the office of Ronald T. Larsen, the hotel manager, to get LeBrane’s termination slip and his pay. Larsen was not in but the termination slip was filled out by Lewis and signed by LeBrane. They then re-entered the service elevator and proceeded down to the basement floor of the hotel. Joseph McFadden and Roger James, two witnesses who each rode part of the way down on the elevator with them, testified that a heated discussion occurred between LeBrane and Lewis. This verbal battle began over LeBrane’s haircut and his termination pay and resulted in each inviting the other outside to settle the matter.
When the elevator reached the basement of the hotel LeBrane and Lewis, followed by Roger James, proceeded to the rear loading dock area of the hotel whereupon LeBrane grabbed a broomstick and struck Lewis on the head breaking the stick. Lewis drew a knife from his pocket and LeBrane struck at his hand several times with the stick. At this point LeBrane dropped the stick and proceeded to run out of the loading dock area toward the hotel service station. When LeBrane attempted *575 to cross a two to three foot ramp which separated the loading dock area from the garage Lewis, who was running after him, cut LeBrane under the left arm with the knife. The chase continued across the garage until Willie Bell Johnson, a service station employee, hollered to Lewis to stop chasing LeBrane. At this point Lewis turned and went back into the hotel.
The police and an ambulance were called. LeBrane was taken to a local hospital and Lewis was taken to the police station. Lewis was subsequently released without charge.
According to the testimony of Dr. Millard Byrd, a general surgeon, and Dr. Alvin Stander, an orthopedic surgeon, both of whom testified at trial, and Dr. Robert C. Leaver, a neurosurgeon, who testified by deposition, LeBrane sustained a knife wound approximately four inches long and one and one-half inches deep on his left arm above the elbow. As a result of the laceration the brachial artery and the median nerve were severed, and the bicep muscle was partially cut. Drs. Byrd and Stander both found resulting disability in LeBrane’s upper and lower arm but they disagreed as to the percentage of this impairment. However, both doctors agreed that LeBrane’s left hand was seriously disabled due to the cutting of the median nerve which significantly and permanently impaired the use of his left thumb.
Based upon substantially the same facts as set forth above, the trial court found that LeBrane was the initial aggressor in the confrontation but went on to hold defendant, Lewis, liable on the ground that he had used excessive force to repel the aggression after LeBrane had withdrawn from the altercation. The trial court dismissed plaintiff’s tort claims against Ronald T. Larsen, H & K Corporation, Jack Tar Management Company, the Jack Tar Capitol House Hotel and Fireman’s Fund Insurance Company, finding no vicarious liability because Lewis was not acting within the course and scope of his employment at the time of the altercation. The judge a quo' also held that there was no evidence upon which to base liability on the employers of Lewis for failure to warn of his alleged dangerous propensities. In addition, the workmen’s compensation claim was dismissed because LeBrane had been fired prior to his injury. Judgment was granted in favor .of plaintiff and only against defendant, Lewis, in the total amount of $16,205.30.
Plaintiff appeals from that portion of the judgment which dismissed the tort claims against defendants, Ronald T. Larsen, H & K Corporation, Jack Tar Management Company, the Jack Tar Capitol House Hotel, and Fireman’s Fund Insurance Company. No appeal from the dismissal of the workmen’s compensation claim has been raised. Defendant, James Lewis, also filed an appeal, the disposition of which will be discussed herein.
The issues presented by this appeal are (1) whether the appeal of defendant-Lewis should be dismissed; (2) Whether the trial court erred, in failing to hold Lewis’ employers and their insurer liable on the ground that they were negligent in failing to warn the public of the allegedly known dangerous propensities of their employee; and (3) whether the trial court erred in failing to hold the employer’s and their insurer liable on the grounds of respondeat superior.
THE APPEAL OF DEFENDANT-LEWIS
When the appeal of these two consolidated suits was lodged in this court on February 15, 1973, a routine check was made, as is done in all appeals, and it was discovered that the appeal bond of defendant-Lewis appeared to be late. The record shows that judgment was signed May 31, 1972, and plaintiff’s application for a new trial was denied June 14, 1972. On August 23, 1972, both plaintiff and defendant-Lewis filed motions and orders for devolutive appeals which were signed by the trial *576 court. Plaintiff also filed an appeal bond on that date in the amount of $500.00. The August 23, 1972 motion and order of appeal on behalf of defendant-Lewis did not specify the amount of the appeal bond and on February 6, 1973, an order was entered fixing his appeal bond at $500.00. The bond was filed February 7, 1973, clearly more than ninety days after the expiration of the delay in which defendant-Lewis could have applied for a new trial. This court on February 23, 1973, issued an order for the parties to show cause by brief on or before April 10, 1973, why the appeal of defendant-Lewis should not be dismissed. The issue was referred to the merits and was briefed and argued by both sides.
Defendant-Lewis contends that by virtue of a 1962 amendment to Louisiana Code of Civil Procedure Article 2087, which sets forth the time periods for filing devolutive appeal bonds, the word “only” was deleted from the first sentence of that provision, thereby rendering the failure to comply with the time periods provided therein only a procedural rather than a jurisdictional defect. Thus, it is argued that an appeal can be dismissed for failure to comply with this provision only upon a motion to dismiss timely filed by the appellee and not ex proprio motu by this court.
Plaintiff contends that the legislature meant no change in the law by its deletion of the word “only” in the 1962 amendments to C.C.P. Art. 2087. It is argued that this deletion was merely the removal of unnecessary verbiage in the provision and the result of a failure to timely file an appeal bond should be no different now after removal of the word “only” than if the word had been retained.
Article 2087 of the Louisiana Code of Civil Procedure originally provided as follows :
“Art. 2087. Delay for taking devolutive appeal
“Except as otherwise provided by law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, only within ninety days of:
“(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
“(2) The court’s refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or
“(3) The date of the mailing of notice of the court’s refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914.”
Article 2087 was amended by Act 92, § 1 of 1962 and presently reads as follows:
“Art. 2087. Delay for taking devolutive appeal
“Except as otherwise provided in this article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken, and the security therefor furnished, within ninety days of:
“(1) The expiration of the delay for applying for a new trial, as provided by Article 1974, if no application has been filed timely;
“(2) The court’s refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or
“(3) The date of the mailing of notice of the court’s refusal to grant a timely application for a new trial, if the applicant is entitled to such notice under Article 1914.
“When a devolutive appeal has been taken timely, an appellee who seeks to have the judgment appealed from modified, revised, or reversed as to any other *577 appellee, may take a devolutive appeal, therefrom, and furnish the security therefor, within the delays allowed in the first paragraph of this article, or within ten days of the granting of the first de-volutive appeal in the case, whichever is later. As amended Acts 1962, No. 92, § 1.”
Our jurisprudence contains numerous decisions holding that the failure to timely file an appeal bond results in a lack of jurisdiction in the appellate court and the appeal can be dismissed by the court on its own motion. Hunter v. Honore, 217 So.2d 475 (1st La.App.1968); Hulsey v. Houston Contracting Company, 225 So.2d 155 (1st La.App.1969); Dion v. Knap, 242 So.2d 847 (1st La.App.1970); Carona v. Webster, 270 So.2d 609 (1st La.App.1972).
Louisiana Code of Civil Procedure Article 2088 provides in pertinent part as follows:
“The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the timely filing of the appeal bond, or if no bond is required, on the granting of the order of appeal. . ., . ” (Emphasis ours)
We have examined the cases cited by both parties and we must agree with counsel for defendant-Lewis that none of the decisions has dealt with the precise issue raised herein, namely the effect of the 1962 amendment to C.C.P. Article 2087 which deleted the word “only” from that provision. However, we are of the opinion that this deletion was not meant to change the legal effect of a failure to timely file an appeal -bond from a jurisdictional defect to a defect merely procedural in nature, but was only the deletion of unnecessary verbiage in the provision. This is evident from a reading of the comments added under C.C.P. Article 2087 when it was amended in 1962 which are to the effect that the provision was amended to afford relief to third party appellees who wished to take an appeal and to correct and substitute wording in the provision.[1] Nothing in *578 the comments indicates that the legislature intended to change the nature of a failure to timely file an appeal bond. In addition, had the legislature intended such a change in the nature of this defect, the above quoted portion of La.C.C.P. Article 2088 to the effect that the jurisdiction of the appellate court “attaches, on the timely filing of the appeal bond” would also have been amended to either change or delete that wording.
We find the case of Hunter v. Hon-oré, supra, which was decided after the 1962 amendment, particularly applicable to the situation presented in the instant case. In Hunter the appellants’ counsel did not learn of the amount of the appeal bond until after the delays for filing of the bond had elapsed. This court held that it was the responsibility of the appellant to check and ascertain the amount of the bond so that it could be timely filed. Likewise, in the case at bar it was the responsibility of appellant-Lewis to check and ascertain the amount of the appeal bond before the delays for its filing elapsed.
Counsel for defendant-Lewis calls our attention to the case of Wright v. Mark C. Smith & Sons Partnership, 264 So.2d 304 (1st La.App.1972), writs granted, 262 La.1069, 266 So.2d 213; 262 La. 1070, 266 So.2d 213 (1970) and contends that the Wright case is now pending before the Supreme Court on the precise issue presented by the instant matter. In Wright, this court dismissed several appeals for lack of jurisdiction because the appeal bonds were not timely filed. Counsel for defendant-Lewis argues that the Supreme Court must have serious doubts as to the propriety of our action in regard to the dismissal of the appeals in Wright by virtue of the fact that writs were granted, and thus we should anticipate a new pronouncement on this issue. However, we cannot at this time speculate upon what result the Supreme Court might reach in the Wright case and therefore, we will continue to follow the well established jurisprudence of this court and the Supreme Court which holds the failure to timely file an appeal bond to be a jurisdictional defect noticeable by the appellate court ex proprio motu.
In Orrell v. Southern Farm Bureau Casualty Insurance Company, 248 La. 576, 180 So.2d 710 (1965) the Supreme Court stated at page 712:
“Albeit there have been some expressions in the decisions of the Courts of Appeal and this Court to the contrary, we consider it to be now well settled that the failure to perfect an appeal by the timely filing of the appeal bond is jurisdictional and that the appellate court can never acquire jurisdiction of an appeal unless the bond for the appeal is filed within the time prescribed by law.” (citations omitted)
See also: Pan American Petroleum Corporation v. Cocrerham, 251 La. 705, 206 So.2d 79 (1968); and Southern Construction Company v. Housing Authority, 250 La. 569, 197 So.2d 628 (1967).
It is argued by defendant-Lewis that the effect of the 1962 amendment was apparently not brought to the attention of the Supreme Court when that court last had this issue before it in the case of Pan American Petroleum Corporation v. Cocrerham, supra. However, we are not prepared to assume that the Supreme Court was not aware of the recent amendment to C.C.P. Article 2087 when that case was considered in 1968.
Therefore, we hold that the appeal of defendant-Lewis must be dismissed for the reason that the appeal bond was not timely filed within the statutory period provided by C.C.P. Article 2087.
*579 We now turn to the issues present by plaintiff’s appeal.
NEGLIGENCE OF THE EMPLOYERS
Plaintiff contends that the trial court erred in failing to hold the employers of Lewis and their insurer liable on the ground that Lewis is a person of vicious and dangerous propensities and that his employers had both actual and constructive knowledge of this fact at the time of the incident but failed to take any action to protect others, including Charles LeBrane, from harm by this employee. This assertion is based primarily on the testimony of several witnesses to the effect that Lewis had engaged in other arguments and fights with hotel employees prior to this altercation with LeBrane.
Joseph Smith, the hotel maintenance engineer, testified that he had seen two prior altercations between Lewis and Ivy Perkins, a hotel busboy, and that he had personally intervened to stop trouble between them. Smith testified that on at least one occasion Lewis had threatened to cut Perkins with a knife, but Smith stated that he never actually saw the weapon.
Ivy Lee Perkins testified that he and Lewis engaged in two arguments with the second argument resulting in a fight. Perkins stated that in the second argument he struck Lewis with a stick and this blow ended the fight. This altercation between Perkins and Lewis took place several weeks prior to the incident between Lewis and LeBrane. Perkins stated that he discussed the incident with Mr. Ronald Larsen, the hotel manager.
James Lewis testified that he had been involved in an altercation with Perkins prior to his fight with LeBrane and that he had told Mr. Larsen about it. He stated that Mr. Larsen told him he would handle it and no disciplinary action was taken against either party.
Mr. Ronald T. Larsen testified that he did not recall discussing the Perkins incident with either Lewis or Perkins. He further stated that Lewis was a fine employee and did an excellent job as kitchen supervisor. Mr. Larsen also testified that he did not recall any prior incidents involving Lewis and that none were indicated on his employment record.
In written reasons for judgment the judge a quo stated:
“While testimony indicated that Lewis ran a ‘tight ship’ in the kitchen and that he was unpopular with most employees and even that he had engaged in a fist fight with another hotel employee, there was nothing in Lewis’ employment record to put his employer on notice that he was dangerous.”
In our view the evidence does not establish actual or constructive knowledge on the part of Lewis’ employers of his alleged dangerous propensities. Although Lewis had been involved in an altercation with Perkins only a short time prior to the incident with LeBrane, it appears from the testimony of Perkins, Smith and Lewis that the only blow which occurred in that fight was the one struck by Perkins. Even if the hotel manager had been made aware of this prior incident, we find it to be of such a minor nature that we cannot see where it would indicate any dangerous or vicious propensities on the part of Lewis to his employers.
In Strawder v. Harrall, 251 So.2d 514 (1st La.App.1971) and in Morse v. Jones, 223 La. 212, 65 So.2d 317 (1953) liability was sought to be imposed upon the employers therein on the grounds that they had actual and constructive knowledge of the dangerous propensities of their employees and were negligent in hiring them. In both cases the employees had criminal records and in the Strawder case the employer knew that the employee was on parole when he hired him. However, in each of those cases the employers were held not to have possessed actual and constructive knowledge of the dangerous propensities of their employees.
*580 In the case at bar Lewis’ employers had no knowledge of any prior criminal record and there was nothing in Lewis’ employment record to alert them to any dangerous propensities he might possess. Therefore, we conclude that the failure of the trial court to find liability on the part of the employers on this ground was not manifestly erroneous.
RESPONDEAT SUPERIOR
Plaintiff also contends that the trial court erred in not imposing liability on Lewis’ employers and their insurer on the grounds that at the time of LeBrane’s injury Lewis was acting within the course and scope of his employment. This contention is based upon the provisions of C. C. Article 2320[2] and the doctrine of re-spondeat superior.
 It is well settled that in order for an employer to be held vicariously liable for the intentional tort of his employee the wrongful act of the employee must be committed in the course and scope of the servant’s employment. Strawder v. Harrall, supra; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951). While the phrase “course and scope of employment” is liberally construed in workmen’s compensation cases, it must be interpreted strictly when the employer is sought to be held vicariously liable for the intentional injury of a third person by his employee. Terito v. McAndrew, 246 So.2d 235 (1st La.App.1971).
Plaintiff contends that the facts of the instant case establish that Lewis was acting within the course and scope of his employment at the time of LeBrane’s injury. It is argued that Lewis had the authority to hire and fire employees under his supervision and that he was exercising this function at the time of the altercation on the hotel premises while escorting Le-Brane from the hotel after having fired him.
In passing upon this contention the trial judge in written reasons for judgment stated:
“James Lewis was the kitchen steward of the hotel. His sole duties were to run the kitchen and to supervise the kitchen employees. In this connection, Lewis did have authority to hire and fire kitchen employees. However, it was not within his duties to police the building.”
In our view when LeBrane and Lewis reached the basement of the hotel on the service elevator and each invited the other outside to fight, what followed had nothing to do with Lewis’ employment. The altercation had at that point become a purely personal matter between LeBrane and Lewis. Lewis was no longer exercising the functions of kitchen steward for which he was employed by the hotel and the only relationship with his employment was the fact that the altercation subsequently took place upon hotel property.
As pointed out in the case of Bradley v. Humble Oil & Refining Company, 163 So.2d 180 (4th La.App.1964), writ refused 246 La. 587, 165 So.2d 483 (1964) an employer is not liable for the intentional torts of his employee merely because the offense was committed on the business premises, but is vicariously liable only when the injury is inflicted while the employee is acting in the performance of his *581 assigned duties and in furtherance of his employer’s obj ectives.
Plaintiff relies on the case of Howard v. Hardware Mutual Casualty Co., 253 So.2d 555 (1st La.App.1971), writ refused 260 La. 19, 254 So.2d 620 (1971) in support of the contention that the employers of Lewis and their insurer should be held liable under the doctrine of respondeat superior. In Howard this court held the employers of a service station, restaurant, and bunk house manager vicariously liable for the wrongful death of a patron who was shot by the manager after an altercation with another customer. The manager was off-dtity at the time but the evidence established that he was always on call and was charged with the responsibility of keeping order on the premises. It was in the discharge of that responsibility that the deceased was shot and killed.
In the case at bar the evidence establishes that Lewis was not charged with keeping order throughout the premises of the entire hotel. His responsibilities consisted solely of supervision of the kitchen area of the hotel and he was not acting within the course and scope of those duties when he inflicted the injury to LeBrane.
In each of the other cases cited by the plaintiff in which the employer was held liable for the intentional tort of an employee found to be acting within the course and scope of his employment the employee was either using excessive force or an illegal method in the performance of an authorized act or duty. In Nash v. Longville Lumber Co., 148 La. 943, 88 So. 226 (1921), the employer was held liable for injuries inflicted by its foreman-employee who used excessive force in an attempt to persuade the plaintiff to return to his position as a “top loader” in a logging operation. In Lewis v. State, 176 So.2d 718 (1st La.App.1965), writ refused 248 La. 364, 178 So.2d 655 (1965), the state’s employees at a penal institution who were authorized to impose punishment on the inmates, were held to have used excessive force in flogging an inmate. In Marie v. Dennis Sheen Transfer, Inc., 134 So.2d 407 (4th La.App.1961), the employer was held liable for injuries received by a third person in a fight with an employee over the proper method for loading and unloading a truck, a job which the employee was hired to perform. In Murray v. Dominick, 236 So.2d 626 (2nd La.App.1970), the employer was held liable for the plaintiff’s injuries received in a fight with an employee in the presence of the employer over the sale of the employer’s beans. In Jefferson v. Rose Oil Company of Dixie, 232 So.2d 895 (2nd La.App.1970), the defendant-mployer was held liable for the plaintiff’s injuries received when the defendant’s employee used excessive force and shot the plaintiff while trying to collect payment for gas already pumped into the plaintiff’s auto.
In the case at bar, the participation of Lewis in the fight with LeBrane was clearly a departure from the duties with which he was charged as the hotel’s kitchen steward. Therefore, we conclude that the trial court was correct in holding that Lewis was acting outside the course and scope of his employment when he intentionally inflicted the injury to LeBrane and his employers and their insurer cannot be held vicariously liable for that injury under the doctrine of respondeat superior.
Accordingly, for the above reasons, the judgment of the District Court dismissing plaintiff’s claims against Ronald T. Larsen, H & K Corporation, Jack Tar Management Company, the Jack Tar Capitol House, and Fireman’s Fund Insurance Company is affirmed at plaintiff’s costs.
Affirmed.

. The comments added under La.C.C.P. Article 2087 when it was amended in 1962 read as follows:
Comments-1962
(a) See Comments under original article.
(b) The 1962 amendment adds the last paragraph to this article, to provide a solution for an increasingly acute problem.
(c) The remedy afforded an appellee to have the judgment appealed from modified to grant him additional relief, through the answer to the appeal sanctioned by Art. 2133, applies only against the appellant. A judgment may be modified or revised as between appellees only through an appeal. Placid Oil Co. v. North Central Texas Oil Co., 206 La.693, 19 So.2d 616 (1944); Coleman v. Cousin, 128 La. 1094, 55 So. 686 (1911); Laloire v. Wiltz, 31 La.Ann. 436 (1879); Succession of Jackson, 77 So.2d 194 (La.App.1955); Lanza v. Metcalf, 25 So.2d 453 (La.App.1946); Walters v. Reliance Industrial Life Ins. Co., 180 So. 880 (La.App.1938).
The difficulty presents itself in cases involving three or more parties, when one obtains an order for a devolutive appeal on the last day, and another, who should take an appeal to protect his position against any change through the first appeal, has no opportunity to do so. The problem is not a new one, see Coleman v. Cousin, 328 La. 1094, 55 So. 686 (1911); but it has been intensified and aggravated by third party practice. Under the last paragraph of this article, such an appellee is granted additional time to obtain his own appeal.
Correction by Law Institute
A motion was made, seconded, and duly adopted that, in the exercise of the authority vested in the Louisiana State Law Institute, and in the dischange of the duty imposed, by the provisions of Section 2(C) of Act No. 15 of 1960, the word- “applicant” is hereby substituted for the word “application” in the second line of Subdivision (2) of Article 2087 of the Louisiana Code of Civil Procedure, as amended and reenacted by Section 1 of Act 92 of 1962 [House Bill No. 370 of 1962], so that this Subdivision (2) of Article 2087, as *578 so amended and re-enaeted, will read as follows:
“(2) The court’s refusal to grant a timely application for a new trial, if the applicant is not entitled to notice of such refusal under Article 1914; or”.

. Art. 2320. Acts of servants, students or apprentices
Art. 2320. Masters and employers are answerable for tlie damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.